Circuit Court for _____Anne Arundel County_____
City or County

# CIVIL—NON-DOMESTIC CASE INFORMATION REPORT

*Directions:*
   *Plaintiff:* This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111. A copy must be included for each defendant to be served.
   *Defendant:* You must file an Information Report as required by Rule 2-323(h).
   **THIS INFORMATION REPORT CANNOT BE ACCEPTED AS AN ANSWER OR RESPONSE.**

FORM FILED BY: [X] PLAINTIFF  [ ] DEFENDANT     CASE NUMBER: _____ (Clerk to insert)

CASE NAME: __Zellen Associates, Inc.__  v  __The Tech Group, Inc., et al.__
                       Plaintiff                                         Defendant

JURY DEMAND: [ ] Yes [X] No     Anticipated length of trial: _____ hours or __5__ days

RELATED CASE PENDING? [ ] Yes [X] No   If yes, Case #(s), if known: _____

HAS ALTERNATIVE DISPUTE RESOLUTION (ADR):   Been Tried? [ ] Yes [X] No
                                             Requested?  [ ] Yes [X] No
If yes, specify: _____

Special Requirements? [ ] Interpreter/communication impairment
                      [ ] Other ADA accommodation: _____

## NATURE OF ACTION (CHECK ONE BOX)

**TORTS**
- [ ] Motor Tort
- [ ] Premises Liability
- [ ] Assault & Battery
- [ ] Product Liability
- [ ] Professional Malpractice
- [ ] Wrongful Death
- [ ] Business & Commercial
- [ ] Libel & Slander
- [ ] False Arrest/Imprisonment
- [ ] Nuisance
- [ ] Toxic Torts
- [ ] Fraud
- [ ] Malicious Prosecution
- [ ] Lead Paint
- [ ] Asbestos
- [ ] Other _____

**LABOR**
- [ ] Workers' Comp.
- [ ] Wrongful Discharge
- [ ] EEO
- [ ] Other _____

**CONTRACTS**
- [ ] Insurance
- [ ] Confessed Judgment
- [X] Other __Corporate__

**REAL PROPERTY**
- [ ] Judicial Sale
- [ ] Condemnation
- [ ] Landlord Tenant
- [ ] Other _____

**OTHER**
- [ ] Civil Rights
- [ ] Environmental
- [ ] ADA
- [ ] Other _____

## DAMAGES / RELIEF

**A. TORTS**
Actual Damages
- [ ] Under $7,500
- [ ] $7,500 - $50,000
- [ ] $50,000 - $100,000
- [ ] Over $100,000

- [ ] Medical Bills $_____
- [ ] Property Damages $_____
- [ ] Wage Loss $_____

**B. CONTRACTS**
- [ ] Under $10,000
- [ ] $10,000 - $20,000
- [X] Over $20,000

**C. NONMONETARY RELIEF**
- [ ] Declaratory Judgment
- [ ] Injunction
- [ ] Other _____

## TRACK REQUEST

With the exception of Baltimore County and Baltimore City, please fill in the estimated LENGTH OF TRIAL. THIS CASE WILL THEN BE TRACKED ACCORDINGLY.
- [ ] 1/2 day of trial or less
- [ ] 1 day of trial time
- [ ] 2 days of trial time
- [ ] 3 days of trial time
- [X] More than 3 days of trial time

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE COUNTY, BALTIMORE CITY, OR PRINCE GEORGE'S COUNTY, PLEASE SEE REVERSE SIDE OF FORM FOR INSTRUCTIONS.*

Date: __11/25/02__   Signature: _____

NDCIR (4/96)                               Over

| | | |
|---|---|---|
| ZELLEN ASSOCIATES, INC.<br>10584 Guilford Road<br>Jessup, Maryland 20794, | * | IN THE |
| | * | CIRCUIT COURT |
| Plaintiff,<br>v. | * | OF MARYLAND |
| | * | FOR |
| THE TECH GROUP, INC.<br>147 Old Solomons Island Road<br>Annapolis, Maryland 21401 | * | ANNE ARUNDEL COUNTY |
| | * | Case No.: |
| SERVE:  Robert J. DiAiso<br>147 Old Solomons Island Road<br>Annapolis, Maryland 21401 | * | |
| and | * | |
| JEFFREY B. KOZERO<br>147 Old Solomons Island Road<br>Annapolis, Maryland 21401 | * | |
| | * | |
| and | * | |
| ROBERT J. DIAISO<br>147 Old Solomons Island Road<br>Annapolis, Maryland 21401, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff, Zellen Associates, Inc. ("Zellen"), by its attorneys, Adam C. Harrison, Donna M. B. King, and Adam C. Harrison, P.C., sues Defendants, The Tech Group, Inc. ("TTG"), Jeffrey B. Kozero ("Kozero") and Robert J. DiAiso ("DiAiso"), and for its reasons and causes of action, says:

1. Zellen is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Jessup, Maryland. At all times relevant hereto, Zellen was authorized to conduct business in the State of Maryland.

2. Upon information and belief, Defendant, TTG, is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business in Annapolis, Maryland.

3. Upon information and belief, Defendant, Kozero, is a resident of the State of Maryland and an employee and owner of TTG.

4. Upon information and belief, Defendant, DiAiso, is a resident of the State of Maryland and an employee and owner of TTG.

## TECH GROUP ASSOCIATES

5. In 1999, Zellen and TTG, Kozero and DiAiso began negotiations for the merging of Zellen and TTG into a new business concern to be known initially as Z-Tech but, because the name Z-Tech was already utilized and unavailable, the new business concern was ultimately to be known as The Tech Group Associates, L.L.C. (all references to Z-Tech and The Tech Group Associates, L.L.C. shall be referred to as "Tech Group Associates"). At all times relevant hereto, TTG, Kozero and DiAiso acted individually and as promoters of Tech Group Associates. In addition, at all times relevant hereto, Kozero and DiAiso acted as representatives of TTG.

6. Zellen entered into the merger negotiations in good faith and, based on these negotiations, a preliminary agreement was reached whereby Zellen would merge with TTG to form Tech Group Associates, based upon the representations of TTG, Kozero and DiAiso as to the financial status of TTG insofar as its ability to successfully merge with Zellen.

7. TTG, Kozero and DiAiso provided Zellen with false information regarding TTG's financial status including, but not limited to, false uncertified financial reports and receivables ledgers. Zellen detrimentally relied on this material information when it reached its preliminary agreement to merge with TTG to form Tech Group Associates.

8. In addition, on numerous occasions, Zellen requested from TTG, Kozero and DiAiso that TTG provide Zellen with a certified copy of TTG's financial information and receivables ledgers showing the true and accurate financial status of TTG. TTG, Kozero and DiAiso never provided Zellen with this information. TTG, Kozero and DiAiso were also aware that Zellen would not move forward with the formation of Tech Group Associates, and would not take certain actions and make certain payments with

respect to the formation of Tech Group Associates, if Zellen was informed of the true and accurate financial status of TTG.

9. Pursuant to the planned merger of Zellen and TTG to form Tech Group Associates, and based upon the representations of TTG, Kozero and DiAiso as to the financial status of TTG, Zellen agreed to assist TTG by agreeing to pay certain corporate expenses necessary for TTG to move forward toward the formation of Tech Group Associates, with the understanding that Zellen would be reimbursed by TTG and Tech Group Associates for these expenses.

10. These aforementioned expenses advanced by Zellen to TTG included monies necessary for TTG to employ Dennis Michael Woods ("Woods"), monies necessary for TTG to employ a business consultant, and other monies advanced by Zellen to TTG, as evidenced by a promissory note executed by TTG.

11. At all times relevant hereto, TTG, Kozero and DiAiso had a duty to Zellen to provide true and accurate financial information to Zellen in connection with the planned merger of Zellen and TTG to form Tech Group Associates.

12. TTG, Kozero and DiAiso made false representations as to TTG's true financial status, with the intention of inducing Zellen to take certain actions and to advance certain monies to TTG in preparation of the planned merger of Zellen and TTG to form Tech Group Associates.

13. At all times relevant hereto, TTG, Kozero and DiAiso knew that the information provided to Zellen regarding TTG's financial status was false or, at the very least, the information provided to Zellen regarding TTG's financial status was provided to Zellen with a reckless disregard for the truth of the information. TTG, Kozero and DiAiso made these statements and provided this information to Zellen with the intent of defrauding Zellen.

14. TTG, Kozero and DiAiso knew that Zellen would rely upon their assertions, statements and information which, if lacking veracity, would cause Zellen to incur substantial damages.

15. Zellen was justified in its reliance upon TTG, Kozero and DiAiso's assertions, statements and information regarding TTG's financial status.

16. As a result of the false information as to TTG's true financial status, Zellen and TTG did not ultimately merge into Tech Group Associates.

17. Although Zellen and TTG did not merge to form Tech Group Associates, an identical entity known as Tech Group Associates, L.L.C. was formed as a corporation in June, 2001, operating under the laws of the State of Maryland. Zellen, as well as the employees and agents of Zellen, have no direct relationship with the Tech Group Associates, L.L.C. formed in June, 2001.

18. To date, in breach of contract and the covenants of good faith and fair dealing, TTG, Kozero and DiAiso have not reimbursed Zellen for the expenses associated with the employment of Woods, the monies necessary for TTG to employ a business consultant, and the other monies advanced by Zellen to TTG, as further detailed below.

## WOODS EMPLOYMENT

19. As a direct and proximate result of the material representations of TTG, Kozero and DiAiso, individually and as promoters of Tech Group Associates, and pursuant to the preliminary agreement of Zellen and TTG to merge into and form Tech Group Associates, Chuck Zellen, as President of Zellen, along with Kozero and DiAiso, entered into a Memorandum of Understanding for the employment of Woods by Tech Group Associates. The Memorandum of Understanding is attached hereto and is incorporated by reference herein as **Exhibit "A"**.

20. The Memorandum of Understanding stated that Woods was to receive a certain salary and benefits package for a period of six (6) years.

21. Based upon the representations of TTG, Kozero and DiAiso as set forth above, and per an agreement reached with TTG, Kozero and DiAiso with respect thereto, Zellen made certain payments of salary and benefits to Woods, as well as other employment-related expenses, with the understanding and

agreement that these payments and expenses would be reimbursed to Zellen by TTG and Tech Group Associates upon completion of the anticipated formation of Tech Group Associates.

22. From September 2000 until January 2001, Woods worked as an employee of TTG, while Zellen and TTG prepared for the anticipated formation of Tech Group Associates. Although Woods was an employee of TTG, it was agreed between Zellen and TTG, Kozero and DiAiso that Zellen would pay salary, expenses, health insurance, computer, automobile, and employer taxes for Woods pending the formation of Tech Group Associates, at which point Zellen would be reimbursed by TTG and Tech Group Associates. The salary and expenses for Woods from September 2000 until January 2001 totaled Seventy Thousand Six Hundred Thirty-Five Dollars and Seventy-Seven Cents ($70,635.77), and Zellen paid these sums based upon the reliance that Zellen and TTG would merge into Tech Group Associates based upon the material representations of TTG, Kozero and DiAiso, as described above. The invoice that includes these expenses is attached hereto and is incorporated by reference herein as **Exhibit "B"**.

23. In January 2001, Zellen was informed that TTG could no longer employ Woods. At that point, to continue with the preliminary plans to merge Zellen and TTG into Tech Group Associates and to prevent any default of the Memorandum of Understanding reached with Woods, Zellen and TTG, Kozero and DiAiso agreed that Woods would become an employee of Zellen until the anticipated formation of Tech Group Associates was completed. From January 2001 until June 2002, when it became apparent that the formation of Tech Group Associates had faltered and merger negotiations were terminated, Zellen incurred salary and employment-related expenses on behalf of Woods totaling Two Hundred Twelve Thousand Six Hundred Forty Dollars and Sixty-Seven Cents ($212,640.67), again with the understanding that these amounts would be reimbursed by TTG and Tech Group Associates when the anticipated formation of Tech Group Associates was completed.

24. Zellen's total damages and expenses related to the Woods employment is Two Hundred Eighty-Three Thousand Two Hundred Seventy-Six Dollars and Forty-Four Cents ($283,276.44).

25.    Zellen has not been reimbursed for the damages and expenses associated with Woods, as agreed upon by TTG, Kozero and DiAiso.

## CONSULTING FEE

26.    As a direct and proximate result of the representations of TTG, Kozero and DiAiso, individually and as promoters of Tech Group Associates, and pursuant to the preliminary agreement of Zellen and TTG to merge into and form Tech Group Associates, a consultant, J.M. Luongo, Inc. ("Luongo"), was hired to assist with the negotiation and formation of Tech Group Associates.

27.    Zellen and TTG, Kozero and DiAiso, individually and as promoters of Tech Group Associates, each agreed to pay one-half of Luongo's expenses. However, when Luongo's expenses required payment, Kozero requested that Zellen pay the expenses in full and thereafter invoice TTG for reimbursement of one-half of the expenses. Upon agreement of TTG, Kozero and DiAiso, individually and as promoters of Tech Group Associates, and as a direct and proximate result of their representations described above, Zellen paid Luongo's expenses in the amount of Six Thousand Dollars and No Cents ($6,000.00) (the "Consulting Fee"), and Zellen billed TTG for one-half of these expenses totaling Three Thousand Dollars and No Cents ($3,000.00) based on the agreement that Zellen would be reimbursed from TTG for its share of the expenses. An invoice reflecting the amount billed to TTG is attached hereto and is incorporated by reference herein as **Exhibit "C"**.

28.    Zellen paid TTG's share of Luongo's expenses with the understanding, and upon the representations of TTG, Kozero and DiAiso, that TTG and Tech Group Associates would reimburse Zellen for TTG's share of these expenses.

29.    Zellen has not been reimbursed for the expenses associated with Luongo, as agreed upon by TTG, Kozero and DiAiso.

## PROMISSORY NOTE

30.    Pursuant to the preliminary agreement of Zellen and TTG to form Tech Group Associates, and as a direct and proximate result of the representations of TTG, Kozero and DiAiso as discussed

6

above, Zellen loaned TTG the principal sum of Seventy Thousand Dollars and No Cents ($70,000.00), with interest at the rate of eleven percent (11%) per annum, as reflected in a promissory note dated October 26, 2000 (the "Promissory Note"). The Promissory Note and a revised loan schedule (the "Revised Loan Schedule") are attached hereto and are incorporated by reference herein as **Exhibit "D"**.

31. Under the terms of the Promissory Note, TTG was to pay all principal and accrued interest of eleven percent (11%) by December 31, 2000. However, TTG failed to pay any amounts due under the Promissory Note by December 31, 2000.

32. Because of TTG's inability to pay the Promissory Note by December 31, 2000, Zellen agreed with TTG to enter into the Revised Loan Schedule. Under the Revised Loan Schedule, payments were to be made monthly from November 27, 2000 until August 19, 2002.

33. On April 20, 2001, TTG made a payment to Zellen of Fifty Thousand Dollars and No Cents ($50,000.00), representing a combined payment of principal and interest, by check designated as "loan repayment." However, TTG failed to make any other payments to Zellen on the Promissory Note.

34. TTG is in default of the Promissory Note for failure to make payments to Zellen under the terms of the Promissory Note and Revised Loan Schedule. Through November 20, 2002, TTG owes Zellen the principal sum of Twenty-Three Thousand Two Hundred Sixty-Seven Dollars and Sixty-Nine Cents ($23,267.69), and accrued interest of Four Thousand Six Hundred Fifty-Eight Dollars and Forty-Seven Cents ($4,658.47), plus additional pre-judgment interest accruing thereafter. An accrued interest spreadsheet detailing these amounts is attached hereto and is incorporated herein as **Exhibit "E"**.

35. The Promissory Note states that upon failure of TTG to pay the principal and interest due under the terms of the Promissory Note, TTG is to "pay all costs and expenses of collection, including a reasonable attorney's fee, not to exceed fifteen (15%) percent of the amounts in controversy." **Exhibit "D"**.

36. The Promissory Note also states that upon default, both principal and accrued interest "shall bear interest from the day when due until said amount is paid in full, payable on demand at the highest legal maximum rate." **Exhibit "D"**.

37. Numerous demands for payment of the Promissory Note have been made, but payment has not been received.

## SUBCONTRACTING WORK

38. TTG also entered into various subcontracts (collectively referred to as the "Subcontracts") with Zellen, whereby Zellen performed work and supplied materials for various construction projects including, but not limited to, projects known between the parties as MFN Hut, Fairfax Hut, Richmond, and Bell Atlantic (collectively referred to as the "Projects").

39. Zellen submitted invoices to TTG (collectively referred to as the "Invoices") for work performed by Zellen under the Subcontracts. The Invoices total Seventy-Six Thousand Three Hundred Eighty Dollars and No Cents ($76,380.00). The Invoices are attached hereto and are incorporated by reference herein as **Exhibit "F"**.

40. Zellen completed the performance of its obligations under the Subcontracts in good faith. To date, TTG failed to pay to Zellen any amounts owed under the Invoices, and the principal sum of Seventy-Six Thousand Three Hundred Eighty Dollars and No Cents ($76,380.00) remains due and owing to Zellen by TTG.

41. Demand for payment of the work and services has been made, but payment has not been received.

42. As a result of TTG's failure to pay Zellen, the terms of the Maryland Prompt Payment Statute, Md. Real Prop. Code Ann., §§ 9-301 et. seq. (1996 Repl. Vol.), have been violated, thereby entitling Zellen to reimbursement of its attorneys' fees.

43. In addition, TTG violated the terms of the Maryland Trust Fund Statute, Md. Real Prop. Code Ann. §§ 9-201 et seq., by failing to pay Zellen from the proceeds of monies paid to TTG by the

8

project owners on the Projects. Under the terms of the Maryland Trust Fund Statute, any officer, director or managing agent that uses the monies held in trust for any purpose other than to pay for labor or materials to be incorporated into a project shall be personally liable to any person damaged by the action. Kozero and DiAiso were, and continue to be, officers, directors and/or managing agents of TTG that misused the trust fund monies referred to herein by failing to pay Zellen for the labor and materials rendered by Zellen to TTG on the Projects. By not receiving payment for the labor and materials Zellen rendered to the Projects, Zellen suffered damages in the amount of Seventy-Six Thousand Three Hundred Eighty Dollars and No Cents ($76,380.00), representing the principal monies due and owing under the Invoices. Pursuant to the terms of the Maryland Prompt Payment Statute and Maryland Trust Fund Statute, Zellen is entitled to reimbursement of its attorneys' fees from Kozero and DiAiso.

### COUNT I – BREACH OF CONTRACT
### WOODS EMPLOYMENT AT TTG
### (TTG)

44. Zellen adopts and incorporates by reference herein its averments contained in Paragraphs One (1) through Forty-Three (43) as stated above.

45. Based upon the representations of TTG, Kozero and DiAiso as set forth above, and per an agreement reached with TTG, Kozero and DiAiso with respect thereto, Zellen made certain payments of salary and benefits to Woods, as well as other employment-related expenses, with the understanding and agreement that these payments and expenses would be reimbursed to Zellen by TTG and Tech Group Associates.

46. From September 2000 until January 2001, Woods worked as an employee of TTG, while Zellen and TTG prepared for the anticipated formation of Tech Group Associates. Although Woods was an employee of TTG, it was agreed between Zellen and TTG, Kozero and DiAiso that Zellen would pay salary, expenses, health insurance, computer, automobile, and employer taxes for Woods pending the formation of Tech Group Associates, at which point Zellen would be reimbursed by TTG and Tech Group Associates. The salary and expenses for Woods from September 2000 until January 2001 totaled

Seventy Thousand Six Hundred Thirty-Five Dollars and Seventy-Seven Cents ($70,635.77), and Zellen paid these sums based upon the reliance that Zellen and TTG would merge into Tech Group Associates based upon the material representations of TTG, Kozero and DiAiso, as described above. See Exhibit "B".

47. As a result of Zellen's completion of its obligations under the agreement with TTG, Kozero and DiAiso for the employment of Woods by TTG, TTG became liable to pay Zellen the total sum of Seventy Thousand Six Hundred Thirty-Five Dollars and Seventy-Seven Cents ($70,635.77). This total sum represents the amount of Woods' salary and employment-related expenses paid by Zellen during the period that Woods was an employee of TTG.

48. TTG failed to reimburse Zellen the sum of Seventy Thousand Six Hundred Thirty-Five Dollars and Seventy-Seven Cents ($70,635.77), thereby breaching its contractual obligations to Zellen under the agreement reached between TTG and Zellen.

49. As a result of TTG's breach of its contractual obligations to Zellen, the principal sum of Seventy Thousand Six Hundred Thirty-Five Dollars and Seventy-Seven Cents ($70,635.77) remains due and owing to Zellen.

**WHEREFORE**, Plaintiff, Zellen Associates, Inc., demands judgment against Defendant, The Tech Group, Inc., in the amount of Seventy Thousand Six Hundred Thirty-Five Dollars and Seventy-Seven Cents ($70,635.77), plus pre-judgment interest, post-judgment interest, attorneys' fees, Court costs, and such other relief as the Court deems just.

### COUNT II - UNJUST ENRICHMENT
### WOODS EMPLOYMENT AT TTG
### (TTG)

50. Zellen adopts and incorporates by reference herein its averments contained in Paragraphs One (1) through Forty-Three (43) as stated above.

51. TTG was aware of, and had knowledge of, the benefits conferred upon it by Zellen when Zellen paid Woods' salary and employment-related expenses during Woods employ at TTG. TTG's

10

acceptance and retention of these non-reimbursed payments and expenses make it inequitable for TTG to retain these benefits without payment of their value.

**WHEREFORE**, Plaintiff, Zellen Associates, Inc., demands judgment against Defendant, The Tech Group, Inc., in the amount of Seventy Thousand Six Hundred Thirty-Five Dollars and Seventy-Seven Cents ($70,635.77), plus pre-judgment interest, post-judgment interest, attorneys' fees, Court costs, and such other relief as the Court deems just.

### COUNT III– QUANTUM MERUIT
### WOODS EMPLOYMENT AT TTG
### (TTG)

52. Zellen adopts and incorporates by reference herein its averments contained in Paragraphs One (1) through Forty-Three (43) as stated above.

53. Zellen rendered Woods' salary and employment-related expenses on behalf of TTG with the intention of receiving payment from TTG for the payments and employment-related expenses rendered. TTG accepted these payments and expenses, received the benefit of these payments and expenses, and knew that Zellen expected to be reimbursed for these payments and expenses. All payments and employment-related expenses rendered by Zellen on behalf of TTG were rendered under such circumstances that TTG knew that Zellen expected to be reimbursed.

**WHEREFORE**, Plaintiff, Zellen Associates, Inc., demands judgment against Defendant, The Tech Group, Inc., in the amount of Seventy Thousand Six Hundred Thirty-Five Dollars and Seventy-Seven Cents ($70,635.77), plus pre-judgment interest, post-judgment interest, attorneys' fees, Court costs, and such other relief as the Court deems just.

### COUNT IV – BREACH OF CONTRACT
### WOODS EMPLOYMENT
### (TTG, KOZERO AND DIAISO)

54. Zellen adopts and incorporates by reference herein its averments contained in Paragraphs One (1) through Forty-Three (43) as stated above.

11

55. Based upon the representations of TTG, Kozero and DiAiso as set forth above, and per an agreement reached with TTG, Kozero and DiAiso with respect thereto, Zellen made certain payments of salary and benefits to Woods, as well as other employment-related expenses, with the understanding and agreement that these payments and expenses would be reimbursed to Zellen by TTG and Tech Group Associates.

56. From September 2000 until January 2001, Woods worked as an employee of TTG, while Zellen and TTG prepared for the anticipated formation of Tech Group Associates. Although Woods was an employee of TTG, it was agreed between Zellen and TTG, Kozero and DiAiso that Zellen would pay salary, expenses, health insurance, computer, automobile, moving expenses, and employer taxes for Woods pending the formation of Tech Group Associates, at which point Zellen would be reimbursed by TTG and Tech Group Associates. The salary and expenses for Woods from September 2000 until January 2001 totaled Seventy Thousand Six Hundred Thirty-Five Dollars and Seventy-Seven Cents ($70,635.77), and Zellen paid these sums based upon the reliance that Zellen and TTG would merge into Tech Group Associates based upon the material representations of TTG, Kozero and DiAiso, as described above. See Exhibit "B".

57. In January 2001, Zellen was informed that TTG could no longer employ Woods. At that point, to continue with the preliminary plans to merge Zellen and TTG into Tech Group Associates and to prevent any default of the Memorandum of Understanding reached with Woods, Zellen and TTG, Kozero and DiAiso agreed that Woods would become an employee of Zellen until the anticipated formation of Tech Group Associates was completed. From January 2001 until June 2002, when it became apparent that the formation of Tech Group Associates had faltered and merger negotiations were terminated, Zellen incurred salary and employment-related expenses on behalf of Woods totaling Two Hundred Twelve Thousand Six Hundred Forty Dollars and Sixty-Seven Cents ($212,640.67), again with the understanding that these amounts would be reimbursed by TTG and Tech Group Associates when the anticipated formation of Tech Group Associates was completed.